In the Matter of the Application of the CITY OF YONKERS, Petitioner, for an Order of Prohibition against MILO R. MALTBIE and Others, Respondents.*

Supreme Court, Albany County, November 7, 1930

---

* Affd., 231 App. Div. 415.

*Harry J. Laragh*, for the petitioner.

*Alfred T. Davison* [*Addison B. Scoville* of counsel], for the Yonkers Railroad Company, respondent.

STALEY, J. The Yonkers Railroad Company applied to the Public Service Commission for an order increasing the fare to be charged upon its lines and time was set for a hearing upon its application. The city of Yonkers by this proceeding seeks an order of prohibition on the ground that the Commission has no jurisdiction of the subject of the application by reason of the existing franchise contracts between the city and the railroad company.

The basis of this contention is the decision of the Court of Appeals (*Matter of Quinby* v. *Public Service Commission*, 223 N. Y. 244, 263) wherein it was held that in the absence of " clear and definite language " it would not be presumed that the Legislature had authorized the Public Service Commission to nullify conditions imposed by local authorities whose consent to the construction and operation of the street railroad was required by the Constitution. The decision in the *Quinby* case has been referred to by the Court of Appeals in later cases and its determination limited.

At the very outset I may say that the powers of the Public Service Commission in this matter depend upon the nature and

conditions of the franchise granted and upon subsequent action of the city authorities affecting their provisions and upon subsequent laws expressing the will of the Legislature for the exercise of its reserve power for regulation of street railroad fares and the action of public authorities under such laws.

Ten franchises are involved, of which three contain no provisions of limitation for fare charges, two contain fare provisions with a five-cent limitation and were granted prior to 1900, and five more contain fare provisions, only one of which was granted after the creation of the Public Service Commission.

All of the last five franchises also contain a provision that the consent is given upon the express condition that all of the provisions of article 4 (section 140 *et seq.*) or article 5 (section 170 *et seq.*), as the case may be, of the Railroad Law (as amd.) shall be complied with. These articles of the Railroad Law at the time of the franchise contained provisions to the effect that the Legislature expressly reserved the right to regulate the rate of fare of any railroad constructed and operated under that law or under the provisions of these articles.

Prior to 1910 there was some doubt as to the extent that the Legislature had delegated its reserve power to the Public Service Commission to increase the fares of street railroad corporations when found to be inadequate to yield a fair return. That doubt was removed by the enactment of chapter 480 of the Laws of 1910, which amended and revised the Public Service Commission Law and particularly by the provision of section 49 of the law as so revised and amended.

By the franchise granted on May 2, 1911, known as a " receiver's franchise," the parties agreed that the consent thereby granted was understood " to modify any franchise inconsistent with it," although by its terms any existing obligation of the railroad company to the city under prior franchises was continued in force, " except the provisions relative to fares and transfers."

An ordinance of the city of Yonkers on April 14, 1919, authorized the establishment of a zoning system of fares and limited its right for a period of two years.

By chapter 134 of the Laws of 1921, which became a law March thirtieth of that year, the Legislature expressly granted to the Public Service Commission the power to increase fares " notwithstanding that a higher or lower rate, fare or charge has been heretofore prescribed by general or special statute, contract, grant, franchise, condition, consent or other agreement." (§ 29, amdg. § 49.)

This law was later amended by chapter 891 of the Laws of 1923,

and the power so far as it related to rates of fare prescribed by contract, grant, franchise, condition, consent or other agreement excised from the statute.

On April 7, 1921, the Public Service Commission made an order in a proceeding then pending before it in which it recited its finding that it was unreasonable to require the Yonkers Railroad Company to transport passengers for a single five-cent fare between points in different municipalities and ordered that the Yonkers Railroad Company be authorized and empowered to collect fares on the basis of the zoning system then in force.

While there are other considerations urged upon the court by the parties herein which are asserted as justifying a conclusion that the Public Service Commission has or has not jurisdiction of the matter, I regard the above statement of the elements in the controversy as the essential and controlling ones.

The force of the decision in the *Quinby* case as applied to the franchises and facts here in question has been materially affected by decisions thereafter rendered as those decisions are applied to the facts in this matter, and by force of those decisions the conclusion is irresistible that the Public Service Commission has jurisdiction of the rates and fares to be charged for the transportation of passengers upon the lines of the Yonkers Railroad Company, and in relation thereto my conclusions may be briefly summarized as follows:

1. As to the franchises which contain no limitation upon fares to be charged there exists no impediment in the jurisdiction of the Commission.

2. As to the franchises containing fare limitations and which are subject to a compliance with the provisions of article 4 or article 5 of the Railroad Law, that the limitation fixed by the franchise is subject to the exercise of the reserve power of the Legislature to regulate the rate of fare, and that such reserve power has been exercised and delegated to the Public Service Commission and jurisdiction is thus conferred upon it. (*Matter of Evens* v. *Public Service Commission*, 246 N. Y. 224.)

3. That the receiver's franchise of May 2, 1911, effectively modified and superseded the prior franchise as to rates of fare (*Public Service Commission* v. *Westchester St. R. R. Co.*, 206 N. Y. 209), and that the statute in existence at the time of this franchise which empowered the Commission to regulate street railroad fares is read into the franchise, and that this contract of 1911 is deemed to have been made as matter of law in submission to the then existing statute. (*People ex rel. City of New York* v. *Nixon*, 229 N. Y. 356, which conferred the jurisdiction which is here challenged.)

4. That the rates of fare which are to be the subject of the proceeding sought to be enjoined are not the rates of fare fixed by the original franchises, but are those fixed by order of the Public Service Commission in 1921 at a time when the Legislature had conferred upon the Commission in clear and definite language the power to regulate rates fixed by franchises and consents of municipal authorities, and the Commission now has the power to change those rates in such manner as the proof before it may legally justify. (*Matter of United Traction Company* v. *Public Service Commission*, 219 App. Div. 95.)

Order may be entered denying the application of petitioner for order of prohibition, with ten dollars costs.